**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | |
|---|---|
| **RONALD A. WEEKS, individually and on behalf of a Class of persons similarly situated,**<br><br>       **Plaintiff,**<br><br>vs.<br><br>**UNITED STATES FIRE INSURANCE COMPANY**<br>**Serve:**<br>       **CT Corporation System**<br>       **4400 Easton Commons Way**<br>       **Suite 125**<br>       **Columbus, OH  43219**<br><br>**TRIP MATE, INC.**<br>**Serve:**<br>       **Corporation Service Company**<br>       **50 West Broad Street**<br>       **Suite 1330**<br>       **Columbus, OH  43215**<br><br>       **Defendants.** | NO. _____<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>*Electronically Filed* |

**I.  INTRODUCTION**

1.      This action is brought on behalf of a Class of persons who were denied the benefits of travel insurance policies they purchased to protect against being quarantined due to the COVID-19 pandemic.

**II.  PARTIES**

2.      Plaintiff Ronald A. Weeks is domiciled in the state of Ohio and is a resident of Hamilton County. Plaintiff is a member of the proposed Class and is a victim of wrongdoing alleged in this Complaint.

3. Defendant United States Fire Insurance Company ("USFI") is a Delaware corporation registered to do business in Ohio.

4. Defendant Trip Mate, Inc. ("TripMate") is a Kansas corporation licensed to do business in Ohio.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction in that the amount in controversy exceeds the jurisdictional minimum of this Court.

6. The Court has personal jurisdiction over each of the Defendants.

7. Venue is proper in that many of the acts and transactions giving rise to this action occurred in this County. Defendants are authorized to conduct business in this County and have conducted business within this County through the sale, issuance, and administration of travel insurance policies to individuals, like Plaintiff.

## IV. FACTS

### A. Plaintiff's Prepaid Travel Arrangements

8. Plaintiff booked travel arrangements through Great Value Vacations ("Great Value") for a trip to Italy with travel set to begin on March 30, 2020. At the time these arrangements were made, Plaintiff also purchased a Travel Protection Plan underwritten by USFI and administered by TripMate (the "Travel Policy").

9. Plaintiff was issued a Certificate of Coverage for Plan Number F421S.

10. Plaintiff paid $5,221.45 to Great Value for this trip.

11. In February and early March, Plaintiff monitored the developing COVID-19 news and, in particular, Italy's struggle to contain the spread of the virus.

2

12. Around this time, Plaintiff was in contact with Great Value about trip alternatives and cancellation deadlines in case developing events did not permit international travel to Italy, or elsewhere.

13. On 9 March 2020, the government of Italy imposed a national quarantine, restricting movement within the country except for necessity, work, and health circumstances.

14. On March 10, Great Value offered a credit against a future trip taken before December 31, 2020 if Plaintiff's travel arrangements were cancelled. Great Value did not offer a refund of the cost of the trip.

15. On March 12, given the lockdown in Italy and worsening events in Ohio and throughout the United States, Plaintiff accepted the future travel credit to mitigate the loss of any prepaid funds due to the worsening pandemic and cancelled his travel to Italy.

16. On March 14, 2020, Ohio Governor DeWine issued Executive Order 2020-01D declaring a state of emergency in Ohio as a result of the COVID-19 pandemic.

17. Then, on March 22, the Director of the Ohio Department of Health issued a Stay at Home order.

18. Plaintiff then made a claim for Trip Cancellation under the Travel Policy being unable to secure anything other than a credit for future travel.

**B.** **The Travel Policy**

19. The Schedule of Benefits for the Travel Policy provides benefits for "Trip Cancellation" up to the Maximum Benefit Amount of the "Trip Cost."

20. The Travel Policy defines "Trip Cancellation" to mean that:

> Benefits will be paid, up to the Maximum Benefit Amount shown in the Schedule of Benefits, to reimburse You for the amount of the unused non-refundable Prepaid Payments or Deposits You paid for Travel Arrangements when You are prevented from taking Your Trip due to:
>
> . . .
>
> 3. For the Other Covered Reasons listed below;

21. The "Trip Cancellation" benefit incorporates specific definitions in the Travel Policy for the perms "Prepaid," "Payments or Deposits", "Travel Arrangements," and "Trip":

> "Prepaid" means Payments or Deposits paid by You for Travel Arrangements for Your Trip prior to Your actual or Scheduled Departure Date. Payments or Deposits for shore excursions, theater, concert or event tickets or fees, or sightseeing, if such arrangements are made during Your Trip and are to be used prior to the Scheduled Return Date of Your Trip, are not considered Prepaid as defined herein.
>
> "Payments or Deposits" means the cash, check, or credit card amounts, actually paid for Your Trip. Certificates, vouchers, discounts, credits, frequent traveler or frequent flyer rewards, miles or points applied (in part or in full) towards the cost of Your Travel Arrangements are not Payments or Deposits as defined herein.
>
> "Travel Arrangements" means: (a) transportation; (b) accommodations; and (c) other specified services arranged by the Travel Supplier for Your Trip.
>
> "Trip" means a scheduled trip for which coverage for Travel Arrangements is requested and the premium is paid prior to Your actual or Scheduled Departure Date of Your Trip.

22. Plaintiffs travel arrangements for his scheduled trip to Italy was booked by Plaintiff paying the prepaid sum of $5,221.45 for transportation, accommodations and other services arranged by his travel agent.

23. The "Trip Cancellation" benefit of the Travel Policy defines "Other Covered Reasons" to apply when the insured or a traveling companion is "quarantined."

4

24. The Travel Policy does not define "quarantined."

25. The ordinary meaning of "quarantine" includes "a restraint upon the activities or communication of persons or the transport of goods designed to prevent the spread of disease or pests."[1]

26. On March 14, 2020, the Governor of the State of Ohio issued Executive Order 2020-01D declaring a state of emergency in response to the COVID-19 pandemic to "protect the lives, safety, and health of the citizens of Ohio." The Executive Order directed all citizens to "heed the advice of the Department of Health and other emergency officials regarding this public health emergency in order to protect their health and safety."

27. On March 22, 2020, Dr. Amy Acton, Director of the Ohio Department of Health issued a Stay at Home Order pursuant to O.R.C. 3701.13 authorizing her to "make special orders . . . for preventing the spread of contagious or infectious diseases." The Order stated: "[A]ll individuals currently living within the State of Ohio are ordered to stay at home or at their place of residence except as allowed in this Order." The Order permitted individuals to leave their home only for Essential Activities, Essential Governmental Functions, Essential Businesses and Operations, and Essential Travel. Leisure travel abroad was not excepted by the Order.

28. The Stay at Home Order described that the intent of the Order was "to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the greatest extent possible."

---

[1] *See*, https://www.merriam-webster.com/dictionary/quarantined.

29. The clear intent and effect of the Stay at Home Order was to restrain the activities of all citizens of the State of Ohio, like Plaintiff, to prevent the spread of COVID-19.

C. **Plaintiff's Claim for Trip Cancellation Coverage Under the Travel Policy**

30. In light of the cancellation of his trip and quarantines imposed in both the United States and Italy, on April 12, 2020, Plaintiff filed a claim for Trip Cancellation benefits under the Travel Policy. As part of his documentation, Plaintiff submitted the Ohio Stay at Home Order.

31. TripMate, as an agent of and administrator for USFI, denied Plaintiff's claim by letter dated June 22, 2020 (the "Denial Letter").

32. The Denial Letter quoted the Sickness or Injury coverage of the Travel Policy and concluded that Plaintiff had not satisfied that section. Plaintiff had not made a claim under the Sickness or Injury coverage of the policy.

33. The Denial Letter then quoted all of the "Other Covered Reasons" coverage provisions in the Travel Policy. The Denial Letter then concluded that the information submitted to TripMate did not document any of these reasons.

34. Confused by the fact that the Denial Letter did not substantively address whether the quarantine coverage was invoked by the Ohio Stay at Home Order, Plaintiff sought clarification from TripMate.

35. TripMate responded: "The quarantine only applies if you are quarantined due to jury duty!"

36. TripMate's interpretation of the Travel Policy is clearly wrong.

37. Only after claiming that the quarantine coverage is only invoked if an insured is called to jury duty very late in the claims adjudication process did TripMate and USFI then take the position, without any substantive explanation, that the Ohio Stay at Home Order did not invoke the quarantine coverage under the Travel Policy.

38. TripMate and USFI have refused to pay Trip Cancellation benefits to Plaintiff as required by the terms of the Travel Policy.

## V. CLASS CERTIFICATION

39. Pursuant to Rules 23(a), (b)(3), (b)(2) and (c)(4) of the Ohio Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent the following persons ("the Class" or "Class Members"):

> **The Declaratory Judgment Class:** All persons insured under a Certificate of Insurance underwritten by United States Fire Insurance Company and administered by Trip Mate, Inc., that provides Trip Cancellation or other benefits in the event that the insured was "quarantined" and prevented from engaging in travel which was to have commenced after a Stay at Home Order was issued in their state of residence.

> **The Claim Denial Sub-Class:** All persons insured under a Certificate of Insurance underwritten by United States Fire Insurance Company and administered by Trip Mate, Inc., that provides Trip Cancellation or other benefits in the event that the insured was "quarantined" and prevented from engaging in travel which was to have commenced after a Stay at Home Order was issued in their state of residence and who submitted a claim for benefits that was denied.

The Class definition is subject to amendment as needed.

40. The Class period begins as described above and ends on the date of entry of judgment.

41. Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiff's counsel.

42. Members of the above-defined Class can be easily identified through Defendants' records.

### B. Numerosity

43. The proposed Class is so numerous that individual joinder of all Members is impracticable.

44. There are hundreds if not thousands of members of the Class. While the identities of Class Members are unknown at this time, such information can be readily ascertained through appropriate investigation and discovery. The disposition of the claims of the Class Members in a single action will provide substantial benefit to all parties and to the Court.

### C. Predominance of Common Questions of Law and Fact

45. Common questions of law and fact exist as to all Members of the Class and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether stay at home orders issued to prevent the spread of COVID-19 invoke the quarantine coverage of the Travel Policy.

   b. Whether, as a result of Defendants' conduct, Plaintiff and Class Members have suffered damages and, if so, the appropriate amount of such damages; and

  c. Whether, as a result of Defendants' conduct, Plaintiff and Class Members are entitled to declaratory and injunctive relief, or other relief, and, if so, the nature of such relief.

46. Pursuant to Rule 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive or corresponding declaratory relief appropriate with respect to the Class as a whole. In particular, Defendants have refused to acknowledge that the Travel Policy provides Trip Cancellation benefits for stay at home orders that impose quarantines.

### D. <u>Typicality</u>

47. Plaintiff's claims are typical of the claims of the Members of the Class.

48. Plaintiff shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiff and all Class Members have been similarly affected by Defendants' common course of conduct.

### E. <u>Adequacy</u>

49. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action.

### F. <u>Superiority</u>

50. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

  a. The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

  b. Individual joinder of all Class Members is impracticable;

  c. Absent a Class, Plaintiff and Class Members will continue to suffer harm as a result of Defendants' unlawful conduct;

  d. Given the amount of individual Class Members' claims, few, if any, Class Members could afford to, or would, seek legal redress for the wrongs Defendants committed, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

  e. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

  f. Adjudications of individual Class Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may substantially impair or impede the ability of other Class Members to protect their interests; and

  g. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused by Defendants.

  h. Defendants implemented uniform, albeit inaccurate, interpretations of the Travel Policy which resulted in uniform damage to Plaintiff and Class Members. As a result, Defendants have acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

  51. Defendants' refusal to acknowledge the Trip Cancellation coverage of the Travel Policy arises out of a common omission or failure to act, which has a uniform

effect on Plaintiff and all Class Members. Plaintiff seeks preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Defendants to discontinue their unlawful conduct.

52. Because Plaintiff seeks injunctive and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. Further, bringing individual claims would overburden the courts and would be an inefficient method of resolving the dispute at the center of this litigation.

## VI. CLAIMS

### A. COUNT 1 – Breach of Contract – Plaintiff and the Class

53. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

54. The Travel Policy provides Trip Cancellation benefits when the insured or her or his travelling companion is quarantined.

55. The Stay at Home Order issued by the Director of the Ohio Department of Health and the stay at home orders issued in other states order residents to remain in their home to prevent the spread of the COVID-19 virus.

56. Leisure travel is prohibited.

57. The stay at home orders imposed a quarantine on Plaintiff and Class Members.

58. Defendant has breached the terms of the Travel Policy by refusing to acknowledge and provide Trip Cancellation benefits for those individuals quarantined as a result of the COVID-19 pandemic.

59. Plaintiff and Class Members are entitled to a declaration that the Travel Policy provides the coverage alleged in this Complaint and notification that they may file a claim for benefits under the Travel Policy.

60. Those members of the Sub-Class who have submitted claims for benefits under the Travel Policy and who have had their claims denied, are entitled to have benefits paid, with interest.

**B.** **COUNT 2 – Bad Faith – Plaintiff**

61. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

62. Defendants owe a duty of good faith to Plaintiff in the interpretation and adjusting of claims for benefits under the Travel Policy.

63. Defendants lacked a reasonable justification in law or fact for the denial of Plaintiff's claim.

64. Defendants' interpretation that the Travel Policy only provides Trip Cancellation for a quarantine when the insured is also called to jury duty is not only contrary to the clear language of the Travel Policy, it is also nonsensical.

65. As a direct and proximate result of Defendants' breach of its duty of good faith in handling Plaintiff's claim under the Travel Policy, Plaintiff has suffered damages. Plaintiff's damages include the amount of the claims denied by Defendants, prejudgment interest, and other just and appropriate damages.

66. As a direct and proximate result of Defendants' breach of its duty of good faith in handling claims under the Travel Policy, Plaintiff is entitled to an award of punitive damages.

## VII. DEMAND FOR RELIEF

Plaintiff therefore requests on behalf of himself and the proposed Class, the following relief:

1. An Order certifying the Class defined in this Complaint, appointing Plaintiff the Class Representative and the undersigned Class Counsel, and directing notice to the Class.

2. A declaration that the Travel Policy provides benefits when an insured or his or her travelling partner are quarantined by a stay at home order issued to combat the COVID-19 pandemic.

3. An injunction prohibiting Defendants from interpreting the Travel Policy as alleged herein.

4. A monetary judgment on behalf of Plaintiff for Defendants' bad faith in the interpretation and adjusting of the Travel Policy.

5. All other relief that appears just and appropriate.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury in this matter.

DATED this 13th day of January, 2021.

13

By:    /s/ Robert R. Sparks
Robert R. Sparks (0073573)
*rrsparks@strausstroy.com*
Matthew W. Fellerhoff (0064005)
*mwfellerhoff@strausstroy.com*
STRAUSS TROY CO., LPA
150 East Fourth Street
Cincinnati, OH 45202
Tel: (513) 621-2120

*Attorneys for Plaintiff*

15055622_1.DOC