UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RONALD A. WEEKS,**

    **Plaintiff,**

  v.

**UNITED STATES FIRE
INSURANCE COMPANY, et al.,**

    **Defendants.**

**Case No. 1:21-cv-118
JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

This cause comes before the Court on Defendants United States Fire Insurance Company ("USFIC") and TripMate, Inc.'s (collectively "Defendants") Motion to Dismiss ("Motion," Doc. 11), filed on March 26, 2021. Plaintiff Ronald Weeks[1] filed his Opposition ("Opposition," Doc. 13) on April 20, 2021, and Defendants followed with their Reply ("Reply," Doc. 15) on May 11, 2021.

In support of their Motion to Dismiss, Defendants have also filed three Motions to File Supplemental Authority (Docs. 16, 18, 20). Weeks filed Oppositions (Docs. 17, 19) against the first two of these Motions, but did not oppose the third.

For the reasons stated more fully below, the Court **DENIES AS MOOT** Defendants' first two Motions to File Supplemental Authority (Docs. 16, 18) and **GRANTS** the third. (Doc. 20). Further, the Court **GRANTS** Defendants' Motion to Dismiss and accordingly **DISMISSES** this action.

---

[1] Weeks brings this matter individually and on behalf of a class of persons similarly situated. (Compl., Doc. 2, #41). However, because the Court has not yet certified the class, Weeks is currently the only Plaintiff.

## BACKGROUND

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the Complaint. Thus, the Court reports, and relies on, those allegations here, but with the disclaimer that these facts are not yet established—and may never be.

Weeks is a resident of Hamilton County, Ohio. (Compl., Doc. 2, #41[2]). Sometime prior to March 2020, Weeks arranged a trip to Italy through Great Value Vacations ("Great Value"). (*Id.* at #42). The scheduled date of departure was March 30, 2020. (*Id.*).

Based on that date alone, readers are unlikely to be surprised that Weeks' trip did not proceed as planned. By early March 2020, Covid-19's spread had led to a worldwide crisis. Relevant here, Italy imposed a national lockdown on March 9, "restricting movement within the country except for necessity, work, and health circumstances." (*Id.* at #43). On March 12, "given the lockdown in Italy and worsening events in Ohio and throughout the United States," Weeks cancelled his trip.[3] (*Id.*). On March 14, Ohio's Governor issued an executive order declaring a state of emergency. (*Id.*). On March 22, the Director of the Ohio Department of Health issued a stay at home order (the "Stay at Home Order"), which permitted residents to leave

---

[2] Refers to PAGEID #.

[3] Weeks also states that, at the time he cancelled his trip, Great Value gave him a credit against a future trip taken before December 31, 2020. (Compl., Doc. 2, #43). It is not clear from the Complaint if Weeks ever used that credit. In any event, the credit's existence and whether it was ever used do not impact the Court's decision here.

their homes only "for Essential Activities, Essential Governmental Functions, Essential Businesses and Operations, and Essential Travel." (*Id.* at #45).

That likely would have been the end of the matter, except for the fact that, at the time Weeks made his travel arrangements, he also purchased a Travel Protection Policy (the "Policy"). (*Id.* at #42). That Policy, which USFI underwrote and TripMate administered, provided Weeks with coverage if he was forced to cancel his trip as a result of certain events. Relevant to this Opinion, the covered events included Weeks or any traveling companion "being hijacked, *quarantined*, required to serve on a jury …, [or] served with a court order to appear as a witness in a legal action in which [neither traveler is] a party." (Schedule of Benefits[4], Doc. 11-1, #101 (emphasis added)).

After Weeks cancelled his trip, he filed a claim under his Travel Protection Policy in April 2020. (Compl., Doc. 2, #46). TripMate responded with a letter denying Weeks' claim, but the letter did not specify the reasons for that denial. (*Id.*). Weeks was confused. He believed Ohio's Stay at Home Order qualified as a "quarantine" event, and thus thought that his trip cancellation, which the Order required, fell within the scope of the Policy. (*Id.*). When Weeks sought further explanation, TripMate responded that "[t]he quarantine only applies if you are quarantined due to jury duty." (*Id.*). At some point later, however, TripMate's explanation changed, and TripMate began to assert that it had denied Weeks' claim because "the Ohio Stay

---

[4] "Where a complaint is based upon an alleged breach of a contract, the Court may consider the terms of the contract on a motion to dismiss." *IAL Logistics India Ltd. v. William Sheppee (USA) Ltd.*, No. 5:18-cv-2864, 2019 WL 2925083, at *4 (N.D. Ohio July 8, 2019).

3

at Home Order did not invoke the quarantine coverage under the Travel Policy." (*Id.* at #47).

On January 13, 2021, Weeks filed the instant Complaint in Hamilton County Court of Common Pleas as a putative class action. (*Id.* at #53). Defendants removed the matter to this Court the following month on diversity grounds. (Doc. 1).

In his Complaint, Weeks brings claims for breach of contract and breach of good faith based on Defendants' refusal to pay his claim under the Travel Protection Policy. (*Id.* at #51–52). In addition to money damages, Weeks seeks declaratory and injunctive relief. (*Id.* at #53).

On March 26, 2021, Defendants filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 11). After the parties completed their briefing on that motion, Defendants filed three Motions for Leave to File Supplemental Authority in which they direct the Court to new case law that has been issued since the Motion to Dismiss became ripe. (Docs. 16, 18, 20). Weeks opposed the first two of these Motions (Docs. 17, 19). In any event, the Court's decision here does not rely on the case law in these first two Motions—thus, the Court **DENIES** those Motions (Docs. 16, 18) **AS MOOT**. Weeks did not oppose the third Motion, however, and the deadline for doing so has now passed (Doc. 20). Accordingly, the Court **GRANTS** Defendants' third Motion to File Supplemental Authority as unopposed, and considers the case law therein in adjudicating Defendants' Motion to Dismiss.

## LEGAL STANDARD

At the pleadings stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Weeks] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That is so, however, only as to well-pled factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Likewise, the Court need not accept as true any legal conclusions alleged in a complaint; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.*

With that in mind, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678. Under the *Iqbal/Twombly* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility before defendants are subjected to the potential rigors (and costs) of the discovery process. Discovery, after all, is not meant

5

to allow parties to discover whether a claim in fact exists, but rather to provide a process for gathering evidence to substantiate an already plausibly-stated claim. *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

## LAW AND ANALYSIS

Weeks asserts that he was effectively in quarantine by virtue of Ohio's Stay at Home Order when he was supposed to go on his trip to Italy. (Compl., Doc. 2, #51). Thus, he argues, because his Travel Protection Policy provided coverage for cancellations due to quarantine and Defendants have refused to pay, Defendants are liable for breach of contract. (*Id.*).

Defendants do not dispute that, had Weeks actually cancelled his trip because he was in quarantine, he would be entitled to payment under the terms of the Policy. (Mot., Doc. 11, #87 n.5). Instead, they assert his trip was not cancelled due to a quarantine, as that term is used in the Policy, for two reasons. First, observing that Weeks cancelled his trip more than a week before Ohio issued its Stay at Home Order, they argue that he cannot claim that the Order—or the supposed "quarantine" it effectively created—was the reason for his cancellation. (Reply, Doc. 15, #174). Second, Defendants contend, even if Weeks had cancelled his trip when Ohio's Stay at Home Order was in effect, he would still not be entitled to relief because the Stay at Home Order did not create a "quarantine" under the Policy. (*Id.* at #179).

The Court finds the latter argument dispositive, and thus does not reach the former. As to that latter argument, Weeks contends that the term "quarantine" includes "a restraint upon the activities or communication of persons or the transport

6

of goods designed to prevent the spread of disease or pests." (Opp'n, Doc. 13, #161 (quoting *Quarantine*, MERRIAM WEBSTER[5]). Applying that definition, Weeks argues that Ohio's Stay at Home Order "restrain[ed]" all Ohio residents from leaving home for non-essential activity and business for the purpose of preventing the spread of Covid-19, and thus amounted to a quarantine, as to which coverage should apply. (Compl., Doc. 2, #45–46). Defendants, on the other hand, argue that the Court should define "quarantine" more narrowly to mean "a state of enforced isolation." (Mot., Doc. 11, #88 (quoting *Cassell v. Snyders,* 458 F. Supp. 3d 981, 1002 (N.D. Ill. 2020)). Accordingly, because Weeks remained free to leave his home for essential activities under the Stay at Home Order, Defendants argue that he was not in quarantine and thus his trip cancellation was not covered.

      The task of choosing between those competing definitions has become much easier, given the Sixth Circuit's recent decision in *Depasquale v. Nationwide Mutual Insurance Company*, No. 21-3467, 2022 WL 1017956 (6th Cir. Apr. 5, 2022), which directly addressed an almost identical situation. There, the plaintiffs likewise sought reimbursement from their travel insurance provider after they were forced to cancel a planned trip overseas with the onset of the pandemic in spring 2020. *Id.* at *1. And there, like here, the plaintiffs' insurance policy covered cancellations due to being "hijacked, quarantined, [or] required to serve on a jury," among other eventualities. The *Despasquale* plaintiffs alleged that the stay at home order in their state (they

---

[5] Available at https://www.merriam-webster.com/dictionary/quarantined.

7

resided in Oregon)—combined with federal advisories recommending against discretionary travel—effectively amounted to a covered "quarantine." *Id.*

The Sixth Circuit disagreed. First, the court concluded that Ohio law governed the interpretation of the plaintiffs' insurance policy. *Id.* at *2. Because Ohio law treats insurance contracts "like any other written contract," the next question was whether the term "quarantine" was ambiguous. *Id.* If the term was ambiguous, then the court would be permitted to consider extrinsic evidence to determine the parties' intent; if it was unambiguous, then the court's analysis would be limited to the language in the contract itself. *Id.* Relying on dictionary definitions, the appeals court concluded that the term "quarantine" is unambiguous and "consistently connotes 'isolation.'" Isolation, in turn, means "to set apart from others." *Id.* at *4.

Thus, according to the Sixth Circuit, the question was simply whether the plaintiffs were "quarantined" in the sense that they were "isolated" or "set apart from others." *Id.* at *5. Because the plaintiffs were Oregon residents, answering this question required the Court to review Oregon's stay at home order and the applicable federal advisories. *Id.* The Court found that, although Oregon's stay at home order "restrained [its] residents from a broad range of activities and travel, the degree of restraint could not plausibly be considered an isolation from others." *Id.* at *6. As the Court observed,

> an ordinary person would not consider himself to be isolated from others if he could travel from home to work, clock-in for a shift at an open business, shop at an open store while remaining six feet from others, grocery-shop with impunity, pick up toilet paper at Wal-Mart, visit grandma to bring her supplies, go to the park, and surely not if he could attend a socially distanced barbeque of fewer than twenty-five people.

8

*Id.* Moreover, to the extent the plaintiffs attempted to rely on the applicable federal advisories, the Court noted that these "only *recommended* Americans avoid foreign travel and social gatherings where people could not remain six feet apart," and, consequently, did not isolate the plaintiffs either. *Id.* Accordingly, because the plaintiffs were not "isolated" by Oregon's stay at home order or the federal advisories, the Court concluded that they were not quarantined at the time they cancelled their trip and quarantine coverage did not apply. *Id.*

As the above description suggests, the facts in *Depasquale* closely parallel those here. Much like the plaintiffs in *Despasquale*, Weeks also cancelled his international travel plans during the early stages of the pandemic and sought compensation from his travel insurance provider pursuant to his Policy's quarantine coverage. (Compl., Doc. 2, #52–53). Also like in *Depasquale*, here neither party disputes that the Court should interpret the Travel Protection Policy under Ohio law. (Opp'n, Doc. 13, #156; Reply, Doc. 15, #177 n.5). The Court also notes that the text of the relevant policy provisions in both cases are strikingly similar to one another. (*Compare* Schedule of Benefits, Doc. 11-1, #101 (providing coverage in the event of cancellation due to "being hijacked, quarantined, [or] required to serve on a jury") *with Despasquale*, 2022 WL 1017956, at *1 (protecting against cancellations due to "being hijacked, quarantined, [or] required to serve on a jury")).

Given those close parallels, the Court has little trouble concluding that the term "quarantine" in Weeks' Travel Protection Policy is unambiguous, and connotes "isolation." Isolation—in turn—means "to be set apart from others." *Depasquale,* 2022

9

WL 1017956, at *4. That said, the Stay at Home Order here (i.e., Ohio's) is not identical to the Oregon stay at home order in *Despasquale*. The key issue, though, is isolation. And on that issue, this Court observes no meaningful difference between the Ohio and Oregon orders. Indeed, even Weeks concedes in his Complaint that Ohio's Order "permitted individuals to leave their home … for Essential Activities, Essential Governmental Functions, Essential Businesses and Operations, and Essential Travel." (Doc. 2, #45). Although these limitations undoubtedly "restrained [Ohio] residents from a broad range of activities and travel, the degree of restraint could not plausibly be considered an isolation from others." *Despasquale*, 2022 WL 1017956, at *6. In short, Weeks was not in "quarantine" at the time he was supposed to travel to Italy—meaning that his Travel Protection Policy's quarantine coverage does not apply.[6]

Beyond disputing the definition of quarantine, Weeks raises one other argument that—while ultimately not compelling—bears further discussion. Specifically, Weeks argues that, because Defendants did not initially argue that the pandemic lockdown was not a "quarantine" when they denied Weeks' claim, they are estopped raising that defense in this litigation. (Opp'n, Doc. 13, #155).

In fairness to Weeks, the Complaint certainly suggests that Defendants' rationale for denying his claim has shifted over time. For example, TripMate's initial

---

[6] To the extent Weeks also contends that he was in quarantine due to Italy's lockdown, the Court rejects this argument as well. Weeks never travelled to Italy, and thus, under the Sixth Circuit's definition of quarantine requiring "isolation," he could not have been isolated as a result of Italy's stay at home order. Stated differently, at most Italy's order had the effect of blocking Weeks from entering the country—it did not, however, have the effect of separating Weeks from other individuals.

10

denial letter simply "quoted all of the 'Other Covered Reasons' coverage provisions in the Travel Policy," before concluding that Weeks' claim submission "did not document any of these reasons." (Compl., Doc. 2, #46). When Weeks reached out to TripMate to clarify whether the lockdown qualified as a quarantine, TripMate responded that "[t]he quarantine [provision] only applies if you are quarantined due to jury duty." (*Id.*). It was only at some later point that Defendants' explanation changed. In particular, it appears that Defendants conceded that a "quarantine" under the policy did not require that the cancellation be related to jury duty, but they nonetheless maintained that a statewide stay at home order did not fit the definition of a "quarantine" under the Policy. (*Id.* at #47).

Weeks contends that that, because TripMate originally interpreted the "quarantine" provision to include only "quarantine[s] due to jury duty," Defendants cannot offer any alternative interpretations of the term as a defense in this litigation. (Opp'n, Doc. 13, #155).

The Court is not persuaded. As the Sixth Circuit has previously observed, under Ohio law, "the doctrines of waiver and estoppel may not be used to expand the coverage described in [an insurance] policy." *Lubrizol Corp. v. Nat'l Union Fire Ins. Co.,* 200 F. App'x 555, 564 (6th Cir. 2006) (citing *Hybud Equip. Corp., v. Sphere Drake Ins. Co., Ltd.,* 597 N.E.2d 1096, 1103–04 (Ohio 1992); *see also Allied World Surplus Lines Ins. Co. v. Richard Goettle, Inc.*, No. 1:17-cv-670, 2019 WL 2270443, at *15 (S.D. Ohio May 28, 2019) ("[I]n Ohio, waiver and estoppel cannot be invoked to create

11

coverage under an insurance policy where coverage otherwise does not exist.").[7] For that reason, the Court declines to credit Weeks' effort to use estoppel to "expand the coverage described in [his] policy" to cover the cancellation of his trip due to Ohio's Stay at Home Order.

Accordingly, the Court dismisses Weeks' breach of contract claim. Moreover, because Ohio law clearly states that there is no bad faith if denial of coverage is appropriate, the Court also dismisses Weeks' claim for breach of good faith. *Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*, No. 1:09CV1108, 2010 WL 395626, at *13 (N.D. Ohio Jan. 26, 2010).

## CONCLUSION

For the reasons stated above, the Court **DENIES AS MOOT** Defendants' first two Motions to File Supplemental Authority (Docs. 16, 18) and **GRANTS** the third. (Doc. 20). Further, the Court **GRANTS** Defendants' Motion to Dismiss and accordingly **DISMISSES** this action. The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in Defendants' favor and **TERMINATE** this matter on the Court's docket.

---

[7] Under Ohio law, "an exception to the general rule that waiver and estoppel cannot be used to extend the coverage of an insurance policy exists when [1] the insurer provides a defense to the insured without reserving its rights under the policy for such a period of time as to prejudice the insured, or [2] when the insurer or its agents misrepresent the extent of coverage the insured is purchasing." *Allstate Fire & Cas. Ins. Co. v. Moore,* 993 N.E.2d 429, 439 (Ohio Ct. App. 2013). Weeks has not argued that either of these exceptions apply in this case, nor does the Court find them applicable here.

**SO ORDERED.**

May 25, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

13